UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TYRELL D. MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-02344-SEB-KMB |
| | ) | |
| OLAKUNLE TALABI, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Tyrell Morris, a former inmate within the Indiana Department of Correction ("IDOC") alleges that Defendant Officer Olakunle Talabi was deliberately indifferent to his health and safety because Officer Talabi insisted on taking him to medical in a wheelchair during a severe asthma attack. That decision resulted in serious injury to Mr. Morris when he passed out and fell out of the wheelchair. Officer Talabi moved for summary judgment, dkt. 51, and Mr. Morris failed to respond, so the motion is ripe. As explained below, because Officer Talabi is entitled to qualified immunity, his summary judgment motion is **granted**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because

those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Morris failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Officer Talabi has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Morris and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

Mr. Morris suffers from severe asthma. Dkt. 52-1 at 23.[1] Severe asthma attacks have led him to be intubated multiple times. *Id.* He has suffered multiple asthma attacks while incarcerated. *Id.* at 26. Sometimes, the attack would be mild enough that he could walk to medical unassisted or with officers posted to catch him if he passed out. *Id.* at 36. Sometimes, though, he knew that he could not make it to medical without passing out, and custody staff would have someone push him to medical in a wheelchair. *Id.* And occasionally, when Mr. Morris was suffering a severe asthma attack, officers would "call a signal," which is a reference to Signal 3000—the radio signal for a medical emergency. *Id.* at 35, 36, 44. When that happened, a nurse came directly to him and gave him oxygen, which stabilized him enough so that he could go to medical in a wheelchair, even without straps to hold him up. *Id.* at 44.[2]

In October 2022, Mr. Morris was incarcerated at Plainfield Correctional Facility ("Plainfield"), where Officer Talabi worked as a correctional officer. *Id.* at 17, 20–21. Officer Talabi knew Mr. Morris had asthma. *Id.* at 32. Mr. Morris testified that he thought Officer Talabi had seen him have an asthma attack one time before, at which time Officer Talabi had someone push him to medical in a wheelchair for a breathing treatment. *Id.* at 32–33.

On October 14, 2022, Mr. Morris woke up and knew he was starting to have an asthma attack. *Id.* at 23. He asked a non-party correctional officer to call medical so that he could get a

---

[1] This document is Mr. Morris's deposition transcript. The Court cites to the page numbers assigned when the document was filed in CM/ECF, not the pages on the original transcript.
[2] In Officer Talabi's summary judgment brief, counsel argues that "Mr. Morris cannot seem to determine how to be transported to medical in an emergency." Dkt. 53 at 8. The argument here seems to be that the only way for Mr. Morris to get to medical was by walking or in a wheelchair, so Mr. Morris's complaint about being taken in a wheelchair it not logical. This characterization is not well taken and ignores Mr. Morris's testimony that officers had called a Signal 3000 in the past in response to particularly severe asthma attacks, which allowed medical staff to stabilize him before using a wheelchair to take him to medical. Put another way, the problem was not the wheelchair *per se*, it was that Officer Talabi did not call a Signal 3000 so that medical staff could come directly to Mr. Morris and decide how to proceed.

3

breathing treatment. *Id.* at 23–24. She told him to sit down and picked up the phone. *Id.* at 29. His condition worsened. *Id.* at 24.

At that point, Officer Talabi came out of a nearby room and asked Mr. Morris what was going on. *Id.* Mr. Morris explained the situation, and Officer Talabi asked what he should do. *Id.* Mr. Morris told him to call a signal, saying, "Let medical come and get me and they can deal with me because we're not going to make it up there." *Id.* at 24. Officer Talabi said, "[O]h no, I need a wheelchair." *Id.* Mr. Morris said, "I'm going to pass out, trust me," but Officer Talabi would not listen, got a wheelchair, and started taking Mr. Morris to medical. *Id.* at 24–25. None of the wheelchairs available in his dorm had straps that would allow the pusher to secure the patient in the chair. *Id.* at 28. According to Mr. Morris's testimony:

> I kept telling him, man, stop, stop. Man, stop. I'm not going to make it. Hit the signal. I'm going to pass out. And sure enough, by the time we made it up there, I eventually passed out, fell out of the wheelchair, opened my face up. The stitches was right here and everything. I had bone fractures in my face I hit the ground so hard.

*Id.* at 25.

Medical records reflect that, after Mr. Morris fell out of the wheelchair, Officer Talabi called a Signal 3000. Dkt. 52-2 at 4. At that point, a nurse came to Mr. Morris's aid. *Id.* Mr. Morris was "face down on the concrete with active bleeding and unresponsive." *Id.* The nurse raised Mr. Morris out of the blood to manually open his airway. *Id.* Because Mr. Morris was unresponsive, the nurse applied automatic external defibrillator pads, but the device advised that no shock should be delivered. *Id.* Medical staff then called 911, and Mr. Morris was transported to the hospital. *Id.* at 4–5.

## III.
## Discussion

Officer Talabi raises multiple arguments as to why summary judgment is appropriate, *see generally* dkt. 53, but the Court addresses only his qualified immunity argument because it is dispositive.

1. **Qualified Immunity Standard**

Qualified immunity "shields a government official from suit for damages when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Sabo v. Erickson*, __ F.4th __, 2025 WL 354484, at *3 (7th Cir. Jan. 31, 2025) (cleaned up). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (cleaned up).

Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once a defendant raises it. *Archer v. Chisolm*, 870 F.3d 603, 613 (7th Cir. 2017). To overcome the defense, a plaintiff must show that: (1) the defendant violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct. *Sabo*, 2025 WL 354484, at *3. Courts may exercise their discretion to choose which element to address first. *Id.* The second element is dispositive in this case, so the Court begins and ends its analysis there.

As to the second element, a constitutional right is "clearly established" when "the law is sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* at 4 (cleaned up). To clearly establish a right, "existing precedent must place the constitutional . . . question beyond debate." *Id.* (cleaned up).

5

The Supreme Court has instructed lower courts not to define clearly established law "at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021); *see also Sabo*, 2025 WL 354484, at *4 (collecting cases). Doing so evades the crucial question in a qualified immunity analysis, which is "whether the official acted reasonably *in the particular circumstances* that he or she faced." *Sabo*, 2025 WL 354484, at *4 (cleaned up; emphasis in original). The right has been defined "too generally if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Id.* (cleaned up; brackets in original). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (cleaned up).

Existing precedent need not be "directly on point" to clearly establish a right. *Id.* (cleaned up). However, to meet his burden on this element, a plaintiff must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Leiser v. Kloth*, 933 F.3d 696, 701 (2019). The failure to do so means that a plaintiff "cannot defeat" a "qualified immunity defense." *Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) (reversing summary judgment denial on qualified immunity grounds because plaintiff did not identify a sufficiently analogous case or explain why defendant's actions were plainly excessive).

### 2. Application

Officer Talabi argues that he is entitled to qualified immunity because his actions were reasonable and not clearly unconstitutional. Dkt. 53 at 9–10. To defeat this defense, Mr. Morris

6

must either point to a reasonably analogous case or show that Officer Talabi's actions so obviously violated the Eighth Amendment that any reasonable person would have recognized that taking him to medical in a wheelchair rather than calling a Signal 3000 in the circumstances presented by this case violated the law even without an analogous case on point. He has done neither. Indeed, he did not respond to Officer Talabi's summary judgment motion at all.

Based on the record evidence, the Court cannot say that Officer Talabi's conduct was "so egregious that it is an obvious violation of a constitutional right." *Leiser*, 933 F.3d at 702 (cleaned up). While Officer Talabi's choice to try to take Mr. Morris to medical in a wheelchair may have been, in retrospect, the wrong choice, it is the type of mistaken choice that qualified immunity is meant to protect.

The Court understands that Mr. Morris suffered serious injuries that may not have happened if Officer Talabi had called a Signal 3000 as he requested and does not diminish those injuries. He has, however, failed to overcome Officer Talabi's qualified immunity defense. As a result, Officer Talabi's summary judgment motion is **granted**.

## IV. Conclusion

For the reasons stated above, Officer Talabi's summary judgment motion, dkt. [51], is **granted**. Mr. Morris's claims are **dismissed with prejudice**. Final judgment will issue by separate entry.

The **clerk is directed** to update the docket to reflect that Defendant Talabi's first name is Olakunle. The **clerk is also directed** to update Mr. Morris's address consistent with the Distribution, below.

**IT IS SO ORDERED.**

Date: 3/14/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

TYRELL D. MORRIS
4617 Green Meadow Dr.
Ft. Wayne, IN 46825

Stephanie Michelle Davis
Office of Attorney General Todd Rokita
stephanie.davis@atg.in.gov

David Matthew Price
Office of the Indiana Attorney General
david.price@atg.in.gov